Commonwealth v. Bavarian Brewing Co., &c.

CASE 110—INDICTMENT FOR COMBINING TO RAISE THE PRICE OF
BEER.—MARCH 7.

# Commonwealth v. Bavarian Brewing Co., &c.

APPEAL FROM KENTON CIRCUIT COURT.

INDICTMENT DISMISSED AND COMMONWEALTH APPEALS.   REVERSED.

CONSPIRACY—COMBINATION OF MANUFACTURERS TO RAISE THE PRICE
OF BEER—CONSTITUTIONALITY OF STATUTE.

Held:   1. Kentucky Statutes, section 3915, providing for the pun-
ishment of any corporation or person who shall "become a
member of, or a party to, or in any way interested in any
pool, trust, combine, agreement, confederation or understanding,
. . . for the purpose of regulating or controlling or fixing
the price of any merchandise, manufactured article, or proper-
ty of any kind," though it forbids combinations to fix prices,
without regard to the value of the property, does not violate
Const. section 198, providing that it shall be the duty of
the General Assembly "to enact such laws as may be necessary
to prevent all trusts, pools, combinations or other organizations
from combining to depreciate below its real value any article,
or to enhance the cost of any article above its real value."

2. A combination of a number of brewers to raise the price of beer
to the extent of the amount of the war tax thereon was a
violation of the statute, though it had for its purpose the rais-
ing of the price of an intoxicant the increased use of which the
law does not favor.

D. A. GLENN AND R. J. BRECKINRIDGE, ATTORNEY GENERAL, FOR
COMMONWEALTH, APPELLANT.

The indictment herein, was drawn under sections 3915 and
3917, Kentucky Statutes, preventing the formation of pools, trusts,
combinations, conspiracies, etc., and to provide punishments
therefor.

It passed the preliminary fire of demurrer and proceeded to
the close of the evidence for the Commonwealth, when upon
motion of appellees the court gave peremptory instruction and
dismissed the indictment, and from that action this appeal is
prosecuted.   Assuming that the indictment is good we will not
discuss that question.

The gravamen of the offense was the combination or agreement to fix, regulate and control the price of manufactured beer.

·It was abundantly proven by the evidence that about all the appellees belonged to the Covington Brewers' Exchange and that the members of the exchange agreed among themselves that after the date of such action, being about the 27th of June, 1898, "the price of keg beer, to the trade, would be increased at the rate of $1 per barrel,· and bottle beer advanced at the rate of ten cents per dozen ·quarts, and five cents per dozen pints." It was also shown that appellees had complete control of the trade in said county and could dictate prices for which beer should be sold, and that each of the appellees should notify his customers of the increased prices, and circulars were sent out accordingly,·and received by the retail dealers.

One reason given by the lower court for its action is, "that the government had placed a war tax of $1 per barrel on beer, and therefore appellees could combine and fix and regulate the prices to the retail dealers." Such a construction would destroy the law absolutely. The gist of the offense is the unlawful combination.

The court also held that the "agreement must have in view an organization for the purpose of destroying competition and of extorting from the·consumer a tribute in addition to the cost price and a fair profit that the manufacturer has a right to demand."

We submit that such a suggestion is entirely foreign to the letter or spirit of the statute. It has no concern whether persons in business make a fair profit or any profit. The statute makes no reference to the cost of production.

The court again misconceives the law, when he holds that there was no offense in the conduct of appellees, because the prices agreed on were not absolute, but relative.·

Again we say the offense did not consist in raising prices, but *in combining to fix and regulate.*

## AUTHORITIES CITED.

McClain Criminal Law, sec. 953; Com. v. Ward, 92 Ky., 153; 3 Chitty's Criminal Law, sec. 1142; Robertson's Crim. Law and Prac. sec. 87; Com. v. Grinstead, 21 R., 1449; People v. Sheldon, 23 L. R. A., 226; Anderson v. Jett, 89 Ky., 575.

iI. R. PROBASCO, ATTORNEY FOR APPELLEES.

Counsel for appellant assert that this prosecution is founded on sections 3915 and 3917 of the Kentucky Statutes. We claim

that these statutes are inconsistent with section 198 of Kentucky Constitution and are therefore void. They do not make it a crime to combine to *depreciate below its real value,* any article, or .to *enhance the cost of same above its real value,* as provided by section 198 of the Constitution, but make it a crime to become interested in a combine, agreement, &c., "for the purpose of regulating or controlling or fixing the price of any merchandise, manufactured articles, or property of any kind," irrespective, whether the combination depreciates or enhances the price of such merchandise.

We also claim that these statutes are contrary to section 1 of the 14th Amendment to. the Constitution of the United States because they are restrictions upon the traffic in intoxicating liquors. The public policy of the State of Kentucky, as shown by its constitution and legislation is not in favor of the unrestricted traffic in intoxicating liquors.

The framers of the Constitution of Kentucky intended that the Legislature might pass laws punishing parties to agreements which were contrary to the public weal, oppressive upon the people, and calculated to work out undue advantage or profit to the parties to the agreement, and detrimental to commerce. It was not intended that an agreement such as the one complained of here, made without any concealment, frankly stating that its necessity arose from an arbitrary but praiseworthy act of Congress, and which agreement limited the increase of price to precisely the amount of the tax which naturally added to the cost of production, is to be proscribed. Furthermore it was not intended by the Constitution that any agreement consistent with, and promotive of, any well defined public policy of the Commonwealth, should be placed under the ban of the law, and the parties thereto stigmatized as criminals.

## AUTHORITIES CITED.

Cass v. Dillon, 2 O. S., 607; Paragraph 1 schedule Kentucky Constitution, 1892; Con. sec. 198; *In re* Grice Cir. Ct. U. S. Northern Dist of Texas, 79 Fed. Rep., 639; 14th Amendment Con. U. S.; Ray on Contractual Limitations, page 230; Watrous v. Allen, 24 N. W., Rep., 104; Anheuser-Busch Brewing Assn. v. Hauck, 27 S. W., 692; Harrison, &c. v. Lockhart, 25 Ind., Rep., 112; Dixon v. U. S., 1st Brock, 177; Fed. Cas., vol. 7, page 763; Greenhood on Public Policy, page 703; Cook's Trade and Labor Combinations, sec. 27, page 156; U. S. v. Nelson, &c. 52 F. R., 646; U. S. v. Patterson, 55 F. R., 605, 636; Shanks v. Scharueghonsen, 8 Mo. App., 522; Com. v. Grinstead, 23 R., 590; Com. v. Hunt, 4 Metc., 111.

Commonwealth v. Bavarian Brewing Co., &c.

GEORGE WASHINGTON, ATTORNEY FOR GEO. WIEDEMANN BREWING COMPANY.

### POINTS AND AUTHORITIES CITED.

1. Indictment must allege every ingredient of the offense. 92 Ky., p 162; U. S. v. Cook, 17 Wallace, 174; U. S. v. Cruikshanks, 2 Otto, 542.

2. In this case the means of accomplishment "must be set out." 148 U. S., 197-214.

3. A combination to do an act not unlawful in itself or in the means to be employed is not criminal. McClain's Crim. Law, sec 954; 89 Ky., 644; 96 Ky., 224; Robertson's Crim. Law and Pro., p. 111; also p. 110.

4. In this case both combination and the purpose of fixing a price are indispensable. Ky. Stat., sec. 3915.

5. But the proof fails. The acused must be brought within all the material words of the indictment. Rawlins v. Commonwealth, 7 Rep., 595.

6. Without proof of a conspiracy such as is contemplated by the statute, the circuit judge would have erred had he given an instruction based upon such a hypothesis. Sparks v. Comth., 89 Ky., 652.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

As a part of the war tax levied by the Congress of the United States during the war with Spain a tax of $1 per barrel was imposed on beer. Appellees, who are brewers of Cincinnati, Covington and Newport, then by agreement raised the price of beer $1 per barrel, and sent out the following: "Special Notice to the Patrons of the Brewers of Cincinnati, Covington and Newport: We, the undersigned brewers of Cincinnati, Covington and Newport, hereby notify our respective patrons that, owing to the heavy additional war tax imposed upon beer, the price of keg beer to the trade will be increased at the rate of $1 (one dollar) per barrel, and the price of bottle beer will be advanced at the rate of ten cents per dozen quarts and five cents per dozen-pints, and that such advance will take effect after midnight the 27th day of June, 1898. This increase covers

the additional tax only, and we do not ask the trade to share the advance in price of brewing material, which in some instances amounts to more than seventy-five cents per barrel." This notice was signed by each of the 25 parties to the arrangement. They were indicted for violating section 3915, Kentucky Statutes: "That if any corporation under the laws of Kentucky, or under the laws of any other State or country, for transacting or conducting any kind of business in this State, or any partnership, company, firm or individual, or other association of persons, shall create, establish, organize or enter into, or become a member of, or a party to, or in any way interested in any pool, trust, combine, agreement, confederation or understanding with any other corporation, partnership, individual, or person, or association of persons, for the purpose of regulating or controlling or fixing the price of any merchandise, manufactured articles, or property of any kind, or shall enter into, become a member of, or party to or in any way interested in any pool, agreement, contract, understanding, combination or confederation, having for its object the fixing, or in any way limiting the amount or quantity of any article of property, commodity or merchandise, to be produced or manufactured, mined, bought or sold, shall be deemed guilty of the crime of conspiracy, and punished therefor as provided in the subsequent sections of this act." The evidence introduced on the trial established the making of the agreement, and sending out of the notice, and the advance in the price of beer by appellees according to its terms. At the conclusion of the evidence, the court peremptorily instructed the jury to find for the defendants, and the Commonwealth has appealed.

It is earnestly argued that the statute is in conflict with section 198 of the Constitution: "It shall be the duty of the General Assembly from time to time as necessity may require to enact such laws as may be necessary to prevent all trusts, pools, combinations or other organizations from 'combining to depreciate below its real value any article or to enhance the cost of any article above its real value." It is insisted that the thing forbidden by the Constitution is the combination to depreciate an article below its real value, or to enhance its cost above its real value, and that the statute is in conflict with the Constitution in so far as it ignores the real value of the property and forbids combinations to fix prices without regard to the value of the property. It is urged that, the government having imposed a tax of $1 a barrel on beer, this added that much to the value of the beer, and the combination of the appellees to this end was not in violation of the constitutional rule. In Com. v. Grinstead (108 Ky., 59) (21 R., 1444) (55 S. W., 720), this precise question was decided. It was there held that the statute is not in conflict with the Constitution, and, upon a reconsideration of the subject, we adhere to the rule there laid down. It is also maintained that the tax was something unforeseen, which neither the brewers nor any one else could anticipate; that it came as a war measure, deemed of necessity by the federal congress, and that the arrangement was only for an advance on beer to the extent of the tax, so that beer which had sold for two, four, and six dollars a barrel was thereafter sold at three, five and seven dollars. It is said that this was not an agreement fixing or regulating or controlling the price of beer, but a simple raise to meet a business necessity, and that it was reasonable. The purpose of the arrangement is not difficult to see. Its aim was to throw upon the purchaser the

entire burden of the tax, and exempt the brewers from bearing any part of it.   The agreement to this end by the 25 establishments making beer had the effect to advance the price of beer $1 a barrel.   As to whether the purchasers of the beer sustained this loss or made an advance in price to the consumer, to throw the burden of the tax on him, the record does not show.   The statute forbids any arrangement, agreement or understanding for the purpose of regulating or controlling or fixing the price of any merchandise or property of any kind.   The fact that there was a horizontal raise of the same amount on all classes of beer, irrespective of the price at which it had been selling, does not sceem to us any more to take the case out of the operation of the statute than if the agreement had been to raise some grades in price more than others.   The purpose of the statute is to forbid all combinations to regulate, fix or control prices, and to leave prices to be regulated entirely by the law of supply and demand.   The arrangement in question entirely defeated this purpose.   If it had not been made, some manufacturers, who had not as many customers as they desired, might have endeavored to increase their trade by dividing the tax burden with their customers.   It is a matter of common knowledge that when an article can not be sold above a certain price, and the retailer can not handle it unless it is sold to him at a reduced price, manufacturers sometimes cut their prices to a smaller margin of profit rather than give up the trade entirely.   The purpose of the agreement before us was to prevent any cut in the prices of the manufacturers.   It had the effect to regulate and control prices, as it was designed to do, and was in our judgment a violation of the statute.

It is also earnestly maintained that the combination, having for its purpose the raising of the price of beer, was

not illegal, for the reason that the cheaper the drink the more of it will be used, and the law does not favor the increased use of intoxicants. But the statute makes no such exception. It makes unlawful, and undertakes to punish, all agreements for the purpose of controlling the prices of any article. The Legislature has thus defined the offense, and the court must enforce the law as it finds it.

Judgment reversed, and cause remanded for a new trial. Whole court sitting.

Judge Burnam dissenting.

Petition for rehearing by appellee overruled.